1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARK EDWARD MELLGREN, | No. 2:14-CV-00387-JTR |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| v. | |
| CAROLYN W. COLVIN, Commissioner of Social Security, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment. ECF Nos. 12, 14. Attorney Lora Lee Stover represents Mark Edward Mellgren (Plaintiff); Special Assistant United States Attorney Leisa A. Wolf represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 16. After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on May 1, 2012, alleging disability beginning September 7, 2011. Tr. 148-61. The applications were denied initially and upon

ORDER GRANTING DEFENDANT'S MOTION . . . . - 1

reconsideration. Tr. 85-91, 97-98. Administrative Law Judge (ALJ) Moira Ausems held a hearing on February 7, 2014, Tr. 30-48, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) K. Diane Kramer. The ALJ issued an unfavorable decision on May 9, 2014. Tr. 15-29. The Appeals Council denied review. Tr. 1-7. The ALJ's May 2014 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on December 4, 2014. ECF Nos. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was 56 years old at the time of the hearing. Tr. 49. Plaintiff graduated from high school, Tr. 182, and previously worked as a galvanizer at a foundry for seventeen years, Tr. 38, 45, and last worked as a general laborer emptying and stocking grocery store freezers, Tr. 35-36. While working at the foundry, Plaintiff had problems with "mucus and congestion," but did not seek medical treatment. Tr. 37-38. Plaintiff stopped working at the foundry because he was worried about health consequences from the job. Tr. 38. Plaintiff stopped working as a general laborer because "it just wasn't anything that [could] really support [him]" and he had problems coughing and breathing. Tr. 36.

Plaintiff testified that he has a hard time breathing, especially when the weather is warmer or in hot environments. Tr. 41. Plaintiff also stated that he is sensitive to stagnant/stale air and chemicals, including those used for cleaning. Tr. 42.

Plaintiff testified that he spends most of his time "[j]ust managing [his] respiration." Tr. 42. Plaintiff testified that he can do minimal household chores,

ORDER GRANTING DEFENDANT'S MOTION . . . - 2

including taking care of his dogs, and doing laundry and going grocery shopping about once a week.  Tr. 43.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This

burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If claimants cannot do their past relevant work (PRW), the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(i-v), 416.920(a)(4)(i-v).

## ADMINISTRATIVE DECISION

On May 9, 2014, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.  For purposes of Plaintiff's DIB application, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  Tr. 20.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 7, 2011, the alleged onset date.  Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairment: chronic obstructive pulmonary disease (COPD).  Tr. 20.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 21.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined he could perform a restricted range of medium work, but he must avoid "concentrated exposure to pulmonary irritants/airborne pollutants such as fumes, odors, dust, gases, poor ventilation, etc."  Tr. 21.  The ALJ concluded that Plaintiff was able to perform his PRW as a store laborer.  Tr. 24.  Thus, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social

ORDER GRANTING DEFENDANT'S MOTION . . . - 4

Security Act at any time from September 7, 2011 through the date of the ALJ's decision.  Tr. 25.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) not including all of Plaintiff's limitations in the ALJ's RFC determination, (2) not posing a hypothetical question to a VE to determine if Plaintiff was capable of doing his PRW, and (3) failing to properly consider Plaintiff's testimony about the severity of his symptoms.

## DISCUSSION

### A.    Credibility

Plaintiff contests the ALJ's adverse credibility determination.  ECF No. 12 at 10-12.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

The ALJ found Plaintiff credible to the "extent that he is unable to perform activity that exceeds the [RFC] identified in this decision."  Tr. 24.  Regarding Plaintiff's symptom reporting that exceeded the ALJ's RFC determination, however, the ALJ found Plaintiff's reporting less than credible as it was contrary to (1) the objective medical evidence, (2) the fact that Plaintiff's symptoms were stable and controlled by medication, and (3) Plaintiff's activities of daily living (ADL).  Tr. 24.

**1.  Contrary to the objective medical evidence**

The ALJ noted "several [medical] reports . . . reflect normal physical and mental status findings," particularly the post-hearing consultative evaluations.  Tr. 24.  The ALJ noted Dr. Gunnar Holmquist's refusal to complete disability paperwork for Plaintiff because Dr. Holmquist concluded that Plaintiff did not have significant or chronic lung disease.  Tr. 24, 272.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ's finding that objective evidence does not support Plaintiff's symptom reporting is a clear and convincing reason to undermine Plaintiff's credibility.  Dr. Holmquist noted that Plaintiff's "[h]istory and symptoms are in discordance with exam findings [relating to COPD]."  Tr. 263; *see also id* (noting that Plaintiff sought treatment from Dr. Richard Byrd in 2000, at which time Dr. Byrd told Plaintiff that he was in normal respiratory health).  In March 2014, Plaintiff underwent a spirometry.  Tr. 341-44.  Reviewing the results of this testing, Joseph Swiggum, M.D. observed that Plaintiff had some initial "component of obstruction that completely normalizes with bronchodilator response."  Tr. 345.  Dr. Swiggum further observed "normal flow volume loop and normal diffusion capacity."  Tr. 345.  Plaintiff argues that the record "demonstrates objective abnormalities which affects Plaintiff's ability to breathe," but cites to no evidence supporting this argument.  ECF No. 12 at 11.  Objective evidence does not support the severity of symptoms reported by Plaintiff; thus, this is a clear and convincing reason to discount Plaintiff's credibility.

**2.  Symptoms stable and controlled with medication**

The ALJ noted that several of Plaintiff's treating sources found Plaintiff's "pulmonary condition . . . stable and controlled by medication."  Tr. 24.

Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ's finding that Plaintiff's symptoms are stable and controlled with medication is a specific, clear, and convincing reason to undermine Plaintiff's credibility. Between May 2012 and August 2012, Plaintiff saw Gunnar Holmquist, M.D. several times for management of his respiratory problems. Initially, Dr. Holmquist observed that Plaintiff did "not appear ill," Tr. 253, but prescribed Plaintiff QVAR and albuterol-ipatropium inhalers, Tr. 254. At the next appointment, Dr. Holmquist told Plaintiff to stop using all his lung medications for one month to determine whether the medications were helpful. Tr. 246. At a June 29, 2012 appointment, Dr. Homquist emphasized that Plaintiff needed to take the QVAR twice a day, every day. Tr. 263. By the end of July 2012, Dr. Holmquist opined that Plaintiff "does not appear to have significant obstructive disease," but rather, "[m]inor bronchospasm" that was "reversible with albuterol." Tr. 271. In August 2012, Dr. Holmquist declined to fill out disability paperwork for Plaintiff because he did not have significant medical problems and because his condition "improved on daily QVAR." Tr. 272. Dr. Holmquist further observed that Plaintiff "clearly has normal lung function by oximetries, both at rest and with exercise." Tr. 273. In a June 2013 office visit with Edward Gruber, ARNP, Plaintiff reported "some improvement while on [respiratory medication]." Tr. 298. The record fully supports that Plaintiff's pulmonary impairment is stable and well controlled with medication; thus, this is a clear and convincing reason to discount Plaintiff's credibility.

### 3. Activities of daily living (ADL)

The ALJ noted that, at the hearing, Plaintiff alleged his ADL were significantly restricted. Tr. 24; *see* Tr. 42-43. The ALJ found this reporting contrary to Plaintiff's earlier reports of being able to do household chores and yard

work (although he worked slowly).  Tr. 24 (citing Tr. 53).  The ALJ also noted that Plaintiff occasionally visits with friends, occasionally goes to car shows, concerts, and out to eat.  Tr. 24; *see* Tr. 191-92.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict his or her other testimony, or (2) "the claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

The ALJ's finding that Plaintiff's activities cast doubt on his alleged limitations is a specific, clear, and convincing reason to undermine Plaintiff's credibility.  At the hearing, Plaintiff testified that he spent most of his time trying to "manag[e] [his] respiration" and "surviv[e]."  Tr. 42.  When further questioned, however, Plaintiff acknowledged that he spends time visiting with friends and family, takes care of his dogs, and does household chores and grocery shopping.  Tr. 43.  Plaintiff also reported to James Bailey, Ph.D. that he sometimes goes for long walks and long car rides, watches television, and reads magazines and newspapers.  Tr. 325.  Plaintiff's reported activities are inconsistent with his testimony that he spends most of his time trying to manage his respiratory problems; thus, this is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

### 4.  Conclusion

In conclusion, the ALJ provided several specific, clear, and convincing reasons to find Plaintiff less than credible in his symptom reporting.  The ALJ's

1  adverse credibility finding is supported by substantial evidence and not based on
2  legal error.

3  **B.    Step four**

4        Plaintiff argues that the ALJ should have included additional limitations in
5  the ALJ's RFC determination, including environmental limitations and limitations
6  associated with Plaintiff's depression.  ECF No. 12 at 10.  Plaintiff further argues
7  that the ALJ erred by not eliciting the opinions of a VE.  *Id.* at 12.

8        A claimant's RFC is "the most [a claimant] can still do despite [his or her]
9  limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P,
10  Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the
11  individual retains the capacity for sustained performance of the physical-mental
12  requirements of jobs.").  In formulating a RFC, the ALJ weighs medical and other
13  source opinions and also considers the claimant's credibility and ability to perform
14  daily activities.  *See*, *e.g.*, *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1226
15  (9th Cir. 2009).

16        In this case, the ALJ found Plaintiff maintained the RFC to perform a
17  restricted range of medium work, but he must avoid "concentrated exposure to
18  pulmonary irritants/airborne pollutants such as fumes, odors, dust, gases, poor
19  ventilation, etc." Tr. 21.

20        **1.  Environmental limitations**

21        Plaintiff argues the ALJ should have included Dr. Arild Lein's opinion that
22  Plaintiff "can only be occasionally exposed to humidity, wetness, extreme heat and
23  extreme cold." ECF No. 12 at 10 (citing Tr. 350).  Defendant argues that the
24  ALJ's RFC determination is consistent with Dr. Lein's opinions, and, even if the
25  ALJ did not adequately account for Dr. Lein's assessment of environmental
26  limitations, any error is harmless because the job of store laborer does not require
27  exposure to wetness, humidity, cold or heat.  ECF No. 14 at 5-7.

28

ORDER GRANTING DEFENDANT'S MOTION . . . - 9

Dr. Lien completed a consultative physical evaluation of Plaintiff in February 2014 (after the administrative hearing). Tr. 328-36. Dr. Lien's only diagnosis was "what appears to be possible mixed obstructive and restrictive lung disease." Tr. 335. Dr. Lien thought the cause of Plaintiff's impairments was likely past "industrial exposure." Tr. 335. Dr. Lien found Plaintiff had virtually no physical limitations, except that he should have no more than occasional (defined as 1/3 of a workday) exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. Tr. 350. The ALJ accounted for Dr. Lien's assessment to the extent that Plaintiff must avoid dust, odors, fumes and pulmonary irritants limitations. Tr. 21. But the ALJ's RFC determination did not include limitations regarding humidity, wetness, and extreme temperatures.

The Court finds that the ALJ likely erred in omitting the humidity, wetness, and extreme temperature limitations assessed by Dr. Lien, but any error was harmless. "An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ concluded that Plaintiff could perform his PRW as a store laborer. Tr. 24. As noted by Defendant, the job of store laborer (as defined by the Dictionary of Occupational Titles (DOT)) does not generally involve exposure to humidity, wetness, or extreme temperatures. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* 922.687-058 *available at* 1991 WL 688132. Therefore, even if the ALJ had included all the limitations assessed by Dr. Lien, Plaintiff's RFC would still allow him to perform his PRW. Accordingly, any error "was inconsequential to the ultimate nondisability determination" and harmless. *Tommasetti*, 533 F.3d at 1038.

## 2. Limitations associated with mental impairments

Plaintiff also argues "the ALJ did not take into consideration how Plaintiff's depression would affect his ability to function in the workplace." ECF No. 14 at 10. The record contains various reports of Plaintiff alleging depression. See, *e.g.*,

ORDER GRANTING DEFENDANT'S MOTION . . . - 10

Tr. 195, 312.  The ALJ rejected Plaintiff's allegations reasoning that Plaintiff made only infrequent reports of depression to his treating sources, the medical record did not contain evidence of "any persistent mental status abnormality" or other clinical findings supporting a diagnosis of depression.  Tr. 20-21.  The ALJ also reasoned that Plaintiff had not alleged depression or anxiety in any of his Social Security applications or questionnaires and that James Bailey, Ph.D., in a post-hearing consultative psychiatric evaluation, determined that Plaintiff did not have a medically determinable psychological impairment.  Tr. 21 (citing Tr. 323-27).

In formulating Plaintiff's RFC, the ALJ did not err by omitting any limitations associated with Plaintiff's alleged mental impairments.  Dr. Bailey was not able to diagnose Plaintiff with any psychiatric disorders.  Tr. 326.  Dr. Bailey assessed Plaintiff with some mild cognitive and social limitations.  Tr. 337-40.  No other medical source in the record assessed Plaintiff with any nonexertional limitations.  In short, there is no evidence that Plaintiff's alleged mental impairments cause more than mild nonexertional limitations.

### 3.  Vocational expert testimony

Plaintiff argues that, after receiving the post-hearing physical and mental consultative evaluations, the ALJ should have held "a supplemental hearing in order to pose hypothetical questions to a [VE]."  ECF No. 12 at 12.  Plaintiff seems to argue that he cannot perform the job of store laborer because that work involved "extreme cold" as it required him "to clean and restock store freezers."  *Id.*  Defendant argues that Plaintiff's argument is moot because the ALJ found Plaintiff could perform his PRW as "generally performed, not actually performed."  ECF No. 14 at 14.

Claimants have the burden of proving they can no longer perform PRW, 20 C.F.R. §§ 404.1512(a), 416.912(a), "'either as actually performed or as generally performed,'" *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 1155, 1166 (9th Cir. 2008) (quoting *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).  A

1   claimant is typically the primary source for determining how a job is actually

2   performed.  Social Security Ruling (SSR) 82-62.  "[T]he best source for how a job

3   is generally performed is usually the [DOT]."  *Pinto v. Massanari*, 249 F.3d 840,

4   846 (9th Cir. 2001).

5        An ALJ's determination that a claimant can perform PRW need not be

6   supported by the testimony of a VE.  *See* 20 C.F.R. § 404.1560(b)(2) ("[The

7   Commissioner] *may* use the services of [VEs] or vocational specialists . . . to

8   obtain evidence [it] need[s] to help [it] determine whether [claimants] can do

9   [their] past relevant work, given [their] [RFC].") (emphasis added); *Crane v.*

10  *Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (holding that the ALJ's determination

11  that the claimant could perform PRW made it unnecessary for the ALJ to call a VE

12  at step five); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (holding that

13  because the claimant "failed to show that he was unable to return to his previous

14  job . . . the burden of proof remained with [the claimant]" and "[t]he [VE's]

15  testimony was thus useful, but not required").

16       In this case, a VE testified at the administrative hearing, but the ALJ only

17  asked the VE about Plaintiff's past work and whether Plaintiff had work skills that

18  would transfer to other work.  Tr. 44-45.  The ALJ did not pose any hypotheticals

19  to the VE as the ALJ wanted to review the post-hearing consultative evaluations.

20  In the ALJ's decision, the ALJ relied on the DOT to conclude that Plaintiff was

21  able to perform his PRW as a store laborer as the job is "generally performed in the

22  economy."  Tr. 25.

23       The Court concluded *supra* that the ALJ did not err in finding Plaintiff less

24  than fully credible, in evaluating the medical evidence, or in formulating Plaintiff's

25  RFC.  Given that the ALJ's decision through step four is supported by substantial

26  evidence and not based on legal error, and Plaintiff makes no showing that he

27  cannot do his PRW as generally performed, the ALJ was not required to solicit the

28  testimony of a VE.  *See Matthews*, 10 F.3d at 681; *Crane*, 76 F.3d at 255.  The

ALJ properly relied on the DOT to conclude that Plaintiff could perform his PRW. A comparison of Plaintiff's RFC to the demands required of a store laborer as listed in the DOT reveal that a person with Plaintiff's RFC should be able to work as a store laborer as the job is generally performed. *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* 922.687-058 *available at* 1991 WL 688132. Plaintiff has not met his burden to prove that he cannot perform his PRW. The ALJ's step four determination is supported by substantial evidence and not based on legal error.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1.     Defendant's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**.

2.     Plaintiff's Motion for Summary Judgment, **ECF No. 12**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Defendant** and the file shall be **CLOSED**.

DATED August 24, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING DEFENDANT'S MOTION . . . - 13